## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| HANNIBAL IP, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 2:26-cv-00442 |
| LENOVO GROUP LTD., | |
| Defendant. | **JURY TRIAL DEMANDED** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Hannibal IP, LLC ("Hannibal" or "Plaintiff") files this Complaint for patent infringement against Lenovo Group Ltd. ("Lenovo" or "Defendant"), and alleges as follows:

### I.    PARTIES

1.    Hannibal is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business located at 5204 Bluewater Dr., Frisco, Texas 75036.

2.    Lenovo is a foreign company organized and existing under the laws of China, with its headquarters at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R. of China. Lenovo does business in Texas and in the Eastern District of Texas, directly or through intermediaries, such as its wholly-owned subsidiaries. Lenovo is responsible for importing, making, marketing, distributing, offering for sale, and/or selling Lenovo-branded tablets and Motorola-branded smartphones in the United States (directly or through its wholly-owned subsidiaries), including in this District.

3.    Lenovo induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including

within this District, infringing products (such as Lenovo-branded tablets, computers and Motorola-branded smartphones, collectively "Accused Products" as described further herein) and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. Lenovo purposefully directs the Accused Products into established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the Accused Products through its websites, Lenovo.com and Motorola.com, which may be accessed throughout the United States, the State of Texas, and this District. Additionally, Lenovo has authorized sellers and sales representatives that offer for sale and sell the Accused Products throughout the State of Texas and to consumers throughout this District, such as: Best Buy, 2800 N Central Expy, Plano, TX 75074; Costco Wholesale, 3800 N Central Expy, Plano, TX 75074; Target, 7003 S Broadway Ave, Tyler, TX; and Wal-Mart, 1701 E End Blvd N, Marshall, TX 75670.

4.      Lenovo maintains a corporate presence in the United States via at least its wholly-owned subsidiaries, including Lenovo (United States) Inc. ("Lenovo US"), Lenovo Global Technology (United States) Inc. ("Lenovo Tech"), and Motorola Mobility LLC ("Motorola"). Lenovo is believed to hold 100% of the issued capital shares of each of Lenovo US, Lenovo Tech, and Motorola. Lenovo, Lenovo US, Lenovo Tech, and Motorola are herein referred to as the "Lenovo Group."

5.      Lenovo US is a corporation organized and existing under the laws of Delaware, with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560. Lenovo US is registered to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

6.      Lenovo Tech. is a corporation organized and existing under the laws of Delaware, with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560. Lenovo Tech. is registered to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

7.      Motorola is a limited liability company organized and existing under the laws of Delaware, with a corporate headquarters located at 222 W. Merchandise Mart Plaza, Suite 1800 Chicago, Illinois 60654. Motorola is registered to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

8.      Lenovo and its U.S.-based subsidiaries (which act as part of a global network of sales and manufacturing subsidiaries) operate as agents of one another and vicariously as parts of the Lenovo Group to work in concert together. For example, in its 2024/25 Annual Report, Lenovo describes itself and its subsidiaries as follows:

> **1   General information and basis of preparation**
>
> Lenovo Group Limited (the "Company") and its subsidiaries (together, the "Group") develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services. Its product lines include legendary Think-branded commercial personal computers and Idea-branded consumer personal computers, as well as servers, workstations, and a family of mobile internet devices, including tablets and smartphones.

Exhibit A, Lenovo Group Limited 2024/25 Annual Report at 179. Therein, Lenovo identifies U.S.-based subsidiaries (including but not limited to Lenovo US, Lenovo Tech. and Motorola) in its list of "principal subsidiaries." *Id*. at 259-265. Lenovo describes its "principal subsidiaries" as follows:

> **36   Principal subsidiaries**
>
> The following includes the principal subsidiaries directly or indirectly held by the Company and, in the opinion of the directors, are significant to the results of the year or form a substantial portion of the net assets of the Group. The directors consider that giving details of other subsidiaries would result in particulars of excessive length.

*Id*. at 259. Lenovo identifies its 2025 "Percentage of issued share capital held" for Lenovo US, Lenovo Tech., and Motorola as "100%." Id. at 261, 263-264. Further, Lenovo identifies the

"principal activities" for Lenovo US as "[d]istribution of IT products," the "principal activities" for Lenovo Tech. as "[p]rovision of IT services and distribution of IT products," and the "principal activities" of Motorola as "[d]eveloper, owner, licensor and seller of communications hardware and software." *Id*. As such, Lenovo US, Lenovo Tech., and Motorola are agents of Lenovo. At the direction and control of Lenovo, the U.S.-based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) make, use, import, offer to sell, and/or sell Lenovo-branded tablets and Motorola-branded smartphones that infringe the Asserted Patents, including in the State of Texas and this District.

9.      Lenovo, alone and through its U.S.-based subsidiaries (such as Lenovo US, Lenovo Tech., and Motorola), places such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. Lenovo has derived substantial revenue, alone and through its U.S.-based subsidiaries (such as Lenovo US, Lenovo Tech., and Motorola), by placing such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas. Lenovo has derived substantial revenue from infringing acts in the United States, including from the sale and use of infringing products. *See* Ex. A at 188 (showing revenues for "Americas").

## II.    JURISDICTION AND VENUE

10.     This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. The Court has subject-matter jurisdiction over the claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     The Court has specific or, alternatively, general personal jurisdiction over Lenovo.

---

COMPLAINT FOR PATENT INFRINGEMENT                                      Page 4

12.      Shares of Lenovo's stock are routinely purchased and sold by investors including investors in the United States through the OTC dealer network under the ticker "LNVGY."

13.      Lenovo is the sole owner of one or more U.S. based entities, including but not limited to Lenovo US, Lenovo Tech. and Motorola, either directly or indirectly. On information and belief, Lenovo makes or has made Accused Products (defined below) outside of the U.S. knowing and intending that a substantial percentage of such products would be sold in the U.S., including this district, through one or more of its U.S. based entities. Lenovo intentionally established one or more distribution channels into the United States, including this District, placed the Accused Products (defined below) into the stream of commerce, and/or could have reasonably foreseen that the Accused Products would be sold in the United States, including this District.

14.      In addition and/or in the alternative, Lenovo has acted as a joint enterprise that includes one or more of its U.S. entities to distribute the Accused Products (defined below) in the United States, including this District. Therefore, the acts of one or more of Lenovo's U.S. entities constitute those of Lenovo.

15.      Lenovo is a foreign corporation transacting business within the state of Texas; is causing tortious injury to Hannibal by committing all or part of the tortious acts described herein within the State of Texas, including this District; and/or is causing tortious injury by committing all or part of the tortious acts or omissions described herein outside the State of Texas while regularly conducting or soliciting business or deriving revenue from goods used or consumed or services rendered within the State of Texas, including this District.

16.      This Court has personal jurisdiction over Lenovo in this action pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least the substantial business each Defendant conducts in this forum, directly and/or through intermediaries, including but not limited

to: (1) having committed acts within the Eastern District of Texas giving rise to this action and having established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice; (2) having directed its activities to customers in the State of Texas and this District, solicited business in the State of Texas and this District, transacted business within the State of Texas and this District and attempted to derive financial benefit from residents of the State of Texas and this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (3) having placed its products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (4) either individually, as members of a common business enterprise, and/or in conjunction with third parties, having committed acts of infringement within Texas and in this District.

17.     Courts in Texas have concluded that Lenovo is subject to personal jurisdiction in the State of Texas. *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-WS-RSP, Dkt. No. 110 (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over Lenovo Grp. Ltd.] would not offend traditional notions of fair play and substantial justice."); *see also Universal Connectivity Tech. Inc. v. Lenovo Grp. Ltd.*, No. 2:23-cv-00449-JRG, Dkt. No. 47 (E.D. Tex. Oct. 17, 2024); *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Limited] is both reasonable and fair.").

18.     Venue is proper in this District under 28 U.S.C. §§ 1391(c)(3). Lenovo is a foreign corporation organized under the laws of China and suits against foreign entities are proper in any judicial district. *See* 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

### III.   FACTUAL ALLEGATIONS

### The Asserted Patents

19.   Hannibal is the owner by assignment of United States Patent No. 11,240,829, titled "Methods and Apparatuses for Scheduling Request Resource Prioritization for Beam Failure Recovery" (the "'829 Patent"). A true and correct copy of the '829 Patent is attached as Exhibit 1.

20.   Hannibal is the owner by assignment of United States Patent No. 11,297,642, titled "Methods and Apparatuses for Uplink Transmission" (the "'642 Patent"). A true and correct copy of the '642 Patent is attached as Exhibit 2.

21.   Hannibal is the owner by assignment of United States Patent No. 11,476,981, titled "Method and Apparatus for Handling LCP Restriction and HARQ Process Number" (the "'981 Patent"). A true and correct copy of the '981 Patent is attached as Exhibit 3.

22.   Hannibal is the owner by assignment of United States Patent No. 11,997,597, titled "Method of Monitoring Physical Downlink Control Channel for Power Saving Signal and Related Device" (the "'597 Patent"). A true and correct copy of the '597 Patent is attached as Exhibit 4.

23.   Hannibal is the owner by assignment of United States Patent No. 11,622,363, titled "Method and apparatus for configuring priority of UCI" (the "'363 Patent"). A true and correct copy of the '363 Patent is attached as Exhibit 5.

24.   Hannibal is the owner by assignment of United States Patent No. 11,832,186, titled "Scheduling for Power Saving State in Next Generation Wireless Networks" (the "'186 Patent"). A true and correct copy of the '186 Patent is attached as Exhibit 6.

25.   Hannibal is the sole and exclusive owner of all right, title, and interest in the '829 Patent, the '642 Patent, the '981 Patent, the '597 Patent, the '363 Patent, and the '186 Patent (collectively, the "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including the filing of this patent infringement lawsuit.

Hannibal also has the right to recover all damages for past, present, and future infringement of the Asserted Patents.

<b><u>The Accused Products</u></b>

26.    Lenovo has imported/exported into/from the United States, manufactured, used, marketed, offered for sale, and/or sold in the United States, smartphones, tablets, notebooks, and other smart devices that infringe the Asserted Patents. Lenovo's Accused Products, which infringe one or more claims of the Asserted Patents, include all Lenovo products capable of supporting and implementing the 3GPP 5G Standard. As shown below, Lenovo advertises that its devices support the 5G standard:

https://news.lenovo.com/pressroom/press-releases/lenovo-delivers-on-5g-computing-with-leading-global-network-operators. Lenovo products with 5G capability include laptops, tablets, and smartphones. For example, the Accused Products include, but are not limited to, the Lenovo Flex 5G, Lenovo IdeaPad 5G (14"), ThinkPad X13 5G, ThinkPad X13s 5G, ThinkPad X13 Gen 6 (13" Intel), ThinkPad T14 Gen 6 (14" Intel), ThinkPad T14s 2-in-1 (14" Intel), ThinkPad T16 Gen 4 (16" Intel), and ThinkPad P14s Gen 6 AMD / ThinkPad P16s Gen 4 AMD, Lenovo Tab P12 5G,

Lenovo Tab P11 5G, Lenovo Tab M10 5G, Lenovo ThinkPhone by Motorola, the Moto g 5G – 2024, Moto g – 2025, Motorola Edge – 2025, Motorola Razr – 2025, and the Moto G Power 5G.

27. Lenovo has and continues to directly and indirectly infringe each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), and/or (c), including but not necessarily limited to one or more of making, using, selling and offering to sell, in this District and elsewhere in the United States, and importing into and exporting from the United States, the Lenovo Accused Products or components thereof, and inducing its customers to infringe the Asserted Patents.

28. Lenovo provides instruction manuals that instruct the users of the Accused Products to use the Accused Products in a manner that infringes the Asserted Patents. For example, Lenovo advertises the compatibility of the Accused Products with 5G and how to connect its products to the 5G network to use the claimed technologies.

29. Further, Lenovo tests each of the Accused Products in the United States and thereby directly performs the claimed method and/or uses the claimed apparatus, thus infringing the Asserted Patents. For example, Lenovo maintains research and development centers throughout the world including in the United States where it tests 5G technology within its products. *See* https://www.lenovo.com/us/en/about/innovation.

30. Further, the Accused Products are capable of infringing the Asserted Patents because they fully support the 3GPP Standard and the claimed functions or capabilities. Further, the claimed inventions that have been adopted by the 3GPP Standard have been implemented by major 5G networks in the United States. For example, at least Verizon has deployed the functionalities described in Release 16 of the 3GPP Standard, including the claimed functionalities.

31.    Lenovo's acts of infringement have caused damage to Hannibal. Hannibal is entitled to recover from Lenovo the damages sustained by Hannibal because of Lenovo's wrongful acts in an amount subject to proof at trial.

32.    Lenovo's infringement of the Asserted Patents is willful. Since at least July 20, 2022, Lenovo has known of one or more of the Asserted Patents as well as Hannibal's contentions of infringement of such Asserted Patents, yet Lenovo continues to commit acts of infringement despite a high likelihood that its actions constitute infringement. And Lenovo knew or should have known that its actions constituted an unjustifiably high risk of infringement by Lenovo and/or customers or end-users of the Accused Devices.

## IV.    FIRST CLAIM FOR RELIEF - INFRINGEMENT OF THE '829 PATENT

33.    Hannibal incorporates paragraphs 1 through 32 as though fully set forth herein.

34.    The '829 Patent includes twenty (20) claims.

35.    Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '829 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '829 Patent including, but not limited to, the Accused Products.

36.    As shown below, the Accused Products infringe at least claim 11 of the '829 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.300 version 16.3.0 "NR and NG-RAN Overall description,"[1] 3GPP TS 38.321 version 16.3.0 "Medium

---

[1] 3GPP TS 38.300 version 16.3.0 "NR and NG-RAN Overall description" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.300/38300-g30.zip.

Access Control (MAC) protocol specification,"[2] and 3GPP TS 38.331 version 16.2.0 "Radio Resource Control (RRC)."[3]

37.     For example, and to the extent the preamble is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as described by the 3GPP 5G Standard with the capability for "Scheduling Request (SR) resource prioritization" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.300 and 38.321:

### 5.3.3    Physical uplink control channel

Physical uplink control channel (PUCCH) carries the Uplink Control Information (UCI) from the UE to the gNB. Five formats of PUCCH exist, depending on the duration of PUCCH and the UCI payload size.

UCI consists of the following information:

- CSI;
- ACK/NAK;
- Scheduling request.

**Source**: 38.300

### 5.4.4    Scheduling Request

The Scheduling Request (SR) is used for requesting UL-SCH resources for new transmission.

The MAC entity may be configured with zero, one, or more SR configurations. An SR configuration consists of a set of PUCCH resources for SR across different BWPs and cells. For a logical channel or for SCell beam failure recovery (see clause 5.17) and for consistent LBT failure (see clause 5.21), at most one PUCCH resource for SR is configured per BWP.

Each SR configuration corresponds to one or more logical channels and/or to SCell beam failure recovery and/or to consistent LBT failure. Each logical channel, SCell beam failure recovery, and consistent LBT failure, may be mapped to zero or one SR configuration, which is configured by RRC. The SR configuration of the logical channel that triggered a BSR (clause 5.4.5) or the SCell beam failure recovery or the consistent LBT failure (clause 5.21) (if such a configuration exists) is considered as corresponding SR configuration for the triggered SR. Any SR configuration may be used for an SR triggered by Pre-emptive BSR (clause 5.4.7).

**Source:** 38.321

---

[2] 3GPP TS 38.321 version 16.3.0 "Medium Access Control (MAC) protocol specification" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.321/38321-g30.zip.
[3] 3GPP TS 38.331 version 16.2.0 "Radio Resource Control (RRC);" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g30.zip.

38.     Each of the Accused Products comprise memory and at least one processor coupled to the memory being configured to perform the functionality described herein. For example, the Lenovo's Flex 5G laptop includes a Qualcomm Snapdragon 8cx 5G Compute Platform. Further, Lenovo's Flex 5G laptop includes onboard and/or off board non-transitory memory for storing data and computer-executable instructions. See, for example, Lenovo's product specifications: https://psref.lenovo.com/syspool/Sys/PDF/Lenovo/Lenovo_Flex_5G_14Q8CX05/Lenovo_Flex_ 5G_14Q8CX05_Spec.PDF

39.     Each of the Accused Products further comprise the functionality to "receive, from a Base Station (BS), a first SR configuration indicating a first SR index associated with a first SR resource;" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.331 version 16.2.0:

### 5.3.5.5     Cell Group configuration

#### 5.3.5.5.1     General

The network configures the UE with Master Cell Group (MCG), and zero or one Secondary Cell Group (SCG). In (NG)EN-DC, the MCG is configured as specified in TS 36.331 [10], and for NE-DC, the SCG is configured as specified in TS 36.331 [10]. The network provides the configuration parameters for a cell group in the *CellGroupConfig* IE.

**Source**: 38.331

Also:

Source: 38.331

40.    Each of the Accused Products further comprise the functionality to "receive, from the BS, a second SR configuration indicating a second SR index associated with a second SR resource;" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.331 version 16.2.0:

Source: 38.331

41.    Each of the Accused Products further comprise the functionality to "trigger a first SR procedure for a Beam Failure Recovery (BFR) procedure based on the first SR configuration;" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this

functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4.4  Scheduling Request

...

Each SR configuration corresponds to one or more logical channels and/or to SCell beam failure recovery and/or to consistent LBT failure recovery. Each logical channel, SCell beam failure recovery, and consistent LBT failure recovery, may be mapped to zero or one SR configuration, which is configured by RRC. The SR configuration of the logical channel that triggered a BSR (clause 5.4.5) or the SCell beam failure recovery or the consistent LBT failure recovery (clause 5.21) (if such a configuration exists) is considered as corresponding SR configuration for the triggered SR. Any SR configuration may be used for an SR triggered by Pre-emptive BSR (clause 5.4.7).

**Source:** 38.321

42.    Each of the Accused Products further comprise the functionality to "trigger a second SR procedure for a Buffer Status Report (BSR) procedure based on the second SR configuration;" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4.4  Scheduling Request

...

Each SR configuration corresponds to one or more logical channels and/or to SCell beam failure recovery and/or to consistent LBT failure recovery. Each logical channel, SCell beam failure recovery, and consistent LBT failure recovery, may be mapped to zero or one SR configuration, which is configured by RRC. The SR configuration of the logical channel that triggered a BSR (clause 5.4.5) or the SCell beam failure recovery or the consistent LBT failure recovery (clause 5.21) (if such a configuration exists) is considered as corresponding SR configuration for the triggered SR. Any SR configuration may be used for an SR triggered by Pre-emptive BSR (clause 5.4.7).

**Source:** 38.321

43.    Each of the Accused Products further comprise the functionality to "in a case that the first SR procedure and the second SR procedure are triggered and not cancelled, and the first SR resource overlaps the second SR resource in a time domain," based on their compatibility with

and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4.4    Scheduling Request

...

Each SR configuration corresponds to one or more logical channels and/or to SCell beam failure recovery and/or to consistent LBT failure recovery. Each logical channel, SCell beam failure recovery, and consistent LBT failure recovery, may be mapped to zero or one SR configuration, which is configured by RRC. The SR configuration of the logical channel that triggered a BSR (clause 5.4.5) or the SCell beam failure recovery or the consistent LBT failure recovery (clause 5.21) (if such a configuration exists) is considered as corresponding SR configuration for the triggered SR. Any SR configuration may be used for an SR triggered by Pre-emptive BSR (clause 5.4.7).

...

When an SR is triggered, it shall be considered as pending until it is cancelled.

Source: 38.321

Also:

### 5.4.4    Scheduling Request

...

When an SR is triggered, it shall be considered as pending until it is cancelled.

...

As long as at least one SR is pending, the MAC entity shall for each pending SR:

...

1> else, for the SR configuration corresponding to the pending SR:

...

NOTE 3: When the MAC entity has pending SR for SCell beam failure recovery and the MAC entity has one or more PUCCH resources overlapping with PUCCH resource for SCell beam failure recovery for the SR transmission occasion, the MAC entity considers only the PUCCH resource for SCell beam failure recovery as valid.

Source: 38.321

44.    Each of the Accused Products further comprise the functionality to "prioritize the first SR resource over the second SR resource;" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

## 5.4.4    Scheduling Request

...

When an SR is triggered, it shall be considered as pending until it is cancelled.

...

As long as at least one SR is pending, the MAC entity shall for each pending SR:

...

    1> else, for the SR configuration corresponding to the pending SR:

...

NOTE 3: When the MAC entity has pending SR for SCell beam failure recovery and the MAC entity has one or more PUCCH resources overlapping with PUCCH resource for SCell beam failure recovery for the SR transmission occasion, the MAC entity considers only the PUCCH resource for SCell beam failure recovery as valid.

**Source**: 38.321

45.      Each of the Accused Products further comprise the functionality to "transmit an SR on the first SR resource rather than the second SR resource after prioritizing the first SR resource over the second SR resource" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

## 5.4.4    Scheduling Request

...

As long as at least one SR is pending, the MAC entity shall for each pending SR:

...

    1> else, for the SR configuration corresponding to the pending SR:

...

NOTE 3: When the MAC entity has pending SR for SCell beam failure recovery and the MAC entity has one or more PUCCH resources overlapping with PUCCH resource for SCell beam failure recovery for the SR transmission occasion, the MAC entity considers only the PUCCH resource for SCell beam failure recovery as valid.

**Source**: 38.321

46.      Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '829 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in

this District and/or elsewhere in the United States, these devices and thus directly infringes the '829 Patent.

47.     Lenovo has had knowledge and notice of the '829 Patent since at least July 20, 2022.

48.     Lenovo indirectly infringes the '829 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '829 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement, Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '829 Patent. Lenovo performs these affirmative acts with knowledge of the '829 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '829 Patent.

49.     Lenovo also indirectly infringes the '829 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '829 Patent is directly

infringed. The accused components within the Accused Products are material to the invention of the '829 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '829 Patent. Lenovo performs these affirmative acts with knowledge of the '829 Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '829 Patent.

50.    Lenovo's infringement of the '829 Patent has damaged and will continue to damage Hannibal.

51.    Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

52.    Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '829 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '829 Patent as of July 20, 2022. Lenovo has thus had actual notice of infringement of the '829 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

53.    This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## V.    SECOND CLAIM FOR RELIEF - INFRINGEMENT OF THE '642 PATENT

54.    Hannibal incorporates paragraphs 1 through 53 as though fully set forth herein.

55.    The '642 Patent includes twelve (12) claims.

56.    Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '642 Patent by making, using, selling, offering for sale, exporting from, and/or importing

into the United States products and/or methods covered by one or more claims of the '642 Patent including, but not limited to, at least the Accused Products.

57.    As shown below, the Accused Products infringe at least claim 1 of the '642 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0 "Medium Access Control (MAC) protocol specification"[4]  and 3GPP TS 38.331 version 16.2.0 "Radio Resource Control (RRC)."[5]

58.    For example, and to the extent the preamble is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as described by the 3GPP 5G Standard.

59.    Each of the Accused Products comprise "one or more non-transitory computer-readable media having computer-executable instructions embodied thereon." For example, as shown below, Lenovo's Flex 5G laptop includes a Qualcomm Snapdragon 8cx 5G Compute Platform. Further, Lenovo's Flex 5G laptop includes onboard and/or off board non-transitory memory for storing data and computer-executable instructions.

---

[4] 3GPP TS 38.321 version 16.3.0 "Medium Access Control (MAC) protocol specification" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.321/38321-g30.zip.
[5] 3GPP TS 38.331 version 16.3.0 "Radio Resource Control (RRC);" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g30.zip.



https://psref.lenovo.com/syspool/Sys/PDF/Lenovo/Lenovo_Flex_5G_14Q8CX05/Lenovo_Flex_5G_14Q8CX05_Spec.PDF.

60.     Each of the Accused Products further comprise "at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions." For example, as shown above, Lenovo's Flex 5G laptop includes a Qualcomm Snapdragon processor.

61.     Each of the Accused Products further comprise the functionality to "receive a plurality of configured grant configurations that allocate a group of Physical Uplink Shared Channel (PUSCH) durations in a bandwidth part (BWP), wherein all the PUSCH durations in the group overlap in a time domain" based on their compatibility with and practice of the 3GPP 5G

Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4 UL-SCH data transfer

#### 5.4.1 UL Grant reception

...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:

...

1> else if this uplink grant is a configured uplink grant:

> 2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and

...

>> 3> consider this uplink grant as a prioritized uplink grant;

>> 3> consider the other overlapping uplink grant(s), if any, as a de-prioritized uplink grant(s);

>> 3> consider the other overlapping SR transmission(s), if any, as a de-prioritized SR transmission(s).

**Source**: 38.321

62.     Each of the Accused Products further comprise the functionality to "identify a set of one or more PUSCH durations from the group of PUSCH durations, each PUSCH duration in the identified set of one or more PUCSH durations usable for transmitting a medium access control (MAC) protocol data unit (PDU) generated from available data" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4 UL-SCH data transfer

#### 5.4.1 UL Grant reception

...

For the MAC entity configured with *lch-basedPrioritization*, priority of an uplink grant is determined by the highest priority among priorities of the logical channels that are multiplexed (i.e. the MAC PDU to transmit is already stored in the HARQ buffer) or have data available that can be multiplexed (i.e. the MAC PDU to transmit is not stored in the HARQ buffer) in the MAC PDU, according to the mapping restrictions as described in clause 5.4.3.1.2. The priority of

...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:

...

1> else if this uplink grant is a configured uplink grant:

> 2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and

...

**Source**: 38.321

63.     Each of the Accused Products further comprise the functionality to "select a specific PUSCH duration from the identified set of one or more PUSCH durations as a prioritized PUSCH duration" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

5.4      UL-SCH data transfer

5.4.1    UL Grant reception
        ...

When the MAC entity is configured with *lch-basedPrioritization*, for each uplink grant whose associated PUSCH can be transmitted by lower layers, the MAC entity shall:
...
1> else if this uplink grant is a configured uplink grant:

2> if there is no overlapping PUSCH duration of another configured uplink grant which was not already de-prioritized, in the same BWP, whose priority is higher than the priority of the uplink grant; and
...
3> consider this uplink grant as a prioritized uplink grant;

Source: 38.321

64.     Each of the Accused Products further comprise the functionality to "perform uplink transmission on the prioritized PUSCH duration" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.321 version 16.3.0:

### 5.4  UL-SCH data transfer

#### 5.4.1  UL Grant reception
...

3> consider this uplink grant as a prioritized uplink grant;

#### 5.4.2  HARQ operation
#### 5.4.2.1  HARQ Entity
...

4> if the uplink grant is a prioritized uplink grant:

  5> deliver the MAC PDU and the uplink grant and the HARQ information of the TB to the identified HARQ process;

  5> instruct the identified HARQ process to trigger a new transmission;

**Source**: 38.321

65.     Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '642 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '642 Patent.

66.     Lenovo has had knowledge and notice of the '642 Patent since at least April 18, 2023.

67.     Lenovo indirectly infringes the '642 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '642 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement,

Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '642 Patent. Lenovo performs these affirmative acts with knowledge of the '642 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '642 Patent.

68.     Lenovo also indirectly infringes the '642 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '642 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '642 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '642 Patent. Lenovo performs these affirmative acts with knowledge of the '642 Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '642 Patent.

69.     Lenovo's infringement of the '642 Patent has damaged and will continue to damage Hannibal.

70.     Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

71.     Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '642 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '642 Patent as of April 18, 2023. Lenovo has thus had actual notice

of infringement of the '642 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

72.     This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VI.     THIRD CLAIM FOR RELIEF - INFRINGEMENT OF THE '981 PATENT

73.     Hannibal incorporates paragraphs 1 through 72 as though fully set forth herein.

74.     The '981 Patent includes eighteen (18) claims.

75.     Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '981 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '981 Patent including, but not limited to, at least the Accused Products.

76.     As shown below, the Accused Products infringe at least claim 1 of the '981 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0 "Physical layer procedures for data,"[6] 3GPP TS 38.213 version 16.2.0 "Physical layer procedures for control,"[7] 3GPP TS 38.321 version 16.2.0 "Medium Access Control (MAC) protocol specification,"[8] and 3GPP TS 38.331 version 16.2.0 "Radio Resource Control (RRC)."[9]

---

[6] 3GPP TS 38.212 version 16.2.0 "Physical layer procedures for data" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.212/38212-g20.zip.
[7] 3GPP TS 38.213 version 16.2.0 "Physical layer procedures for control" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.213/38213-g20.zip.
[8] 3GPP TS 38.321 version 16.2.0 "Physical layer procedures for control" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.321/38321-g20.zip.
[9] 3GPP TS 38.331 version 16.2.0 "Physical layer procedures for control" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g20.zip.

77.    For example, and to the extent the preamble is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as described by the 3GPP 5G Standard.

78.    Each of the Accused Products comprise "one or more non-transitory computer-readable media having computer-executable instructions embodied thereon." For example, as shown below, Lenovo's Flex 5G laptop includes a Qualcomm Snapdragon 8cx 5G Compute Platform. Further, Lenovo's Flex 5G laptop includes onboard and/or off board non-transitory memory for storing data and computer-executable instructions.



https://psref.lenovo.com/syspool/Sys/PDF/Lenovo/Lenovo_Flex_5G_14Q8CX05/Lenovo_Flex_5G_14Q8CX05_Spec.PDF.

79.     Each of the Accused Products further comprise "at least one processor coupled to the one or more non-transitory computer-readable media, and configured to execute the computer-executable instructions." For example, as shown above, Lenovo's Flex 5G laptop includes a Qualcomm Snapdragon processor.

80.     Each of the Accused Products further comprise the functionality to "receive, from a base station (BS), a radio resource control (RRC) message that includes a first configuration indicating a first parameter associated with a first bandwidth part (BWP) and a second configuration indicating a second parameter associated with a second BWP" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.331 version 16.2.0:

Also:

### 6.3.2     Radio resource control information elements

```
ServingCellConfig ::=                SEQUENCE {
  ...
  uplinkConfig                       UplinkConfig
    ...
    UplinkConfig ::=            SEQUENCE {
    uplinkBWP-ToAddModList           SEQUENCE (SIZE (1..maxNrofBWPs)) OF BWP-Uplink
      ...
      BWP-Uplink ::=                 SEQUENCE {
        bwp-Id                       BWP-Id,
        bwp-Common                   BWP-UplinkCommon
        bwp-Dedicated                BWP-UplinkDedicated
      ...
      BWP-UplinkDedicated ::=        SEQUENCE {
        pucch-Config                     SetupRelease { PUCCH-Config }
        pusch-Config                     SetupRelease { PUSCH-Config }
          ...
          PUSCH-Config ::=                       SEQUENCE {
            ...
            harq-ProcessNumberSizeDCI-0-2-r16                INTEGER (0..4)
              ...
```

harq-ProcessNumberSizeDCI-0-2
Configure the number of bits for the field "HARQ process number" in DCI format 0_2 (see TS 38.212 [17], clause 7.3.1).

**Source**: 38.331

81.     Each of the Accused Products further comprise the functionality to "receive, from the BS, downlink control information (DCI) having a DCI format, the DCI indicating one of a data reception and a data transmission on a BWP, and the DCI including a field indicating a hybrid automatic repeat request (HARQ) process number to be applied by the UE for the data reception or data transmission" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

## 3.3     Abbreviations
...
DCI          Downlink control information
...
PDSCH        Physical downlink shared channel

### 7.3.1.2.2     Format 1_1

DCI format 1_1 is used for the scheduling of PDSCH in one cell.
...

- Bandwidth part indicator – 0, 1 or 2 bits as determined by the number of DL BWPs $n_{BWP,RRC}$ configured by higher layers, excluding the initial DL bandwidth part. The bitwidth for this field is determined as $\lceil \log_2(n_{BWP}) \rceil$ bits, where

- HARQ process number – 4 bits

**Source**: 38.212

Also:

## 3.3    Abbreviations

...

DCI                   Downlink control information

...

PDSCH                 Physical downlink shared channel

### 7.3.1.2.3    Format 1_2

DCI format 1_2 is used for the scheduling of PDSCH in one cell.

...

- Bandwidth part indicator – 0, 1 or 2 bits as determined by the number of DL BWPs $n_{BWP,RRC}$ configured by higher layers, excluding the initial DL bandwidth part. The bitwidth for this field is determined as $\lceil \log_2(n_{BWP}) \rceil$ bits, where

- HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format1-2*

**Source**: 38.212

82.    Each of the Accused Products further comprise the functionality to "determine whether a bit length of the field is one of fixed and variable according to the DCI format" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

### 7.3.1.2.2    Format 1_1

DCI format 1_1 is used for the scheduling of PDSCH in one cell.

...

- HARQ process number – 4 bits

### 7.3.1.2.3    Format 1_2

DCI format 1_2 is used for the scheduling of PDSCH in one cell.

...

- HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format1-2*

**Source**: 38.212

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 29

83.     Each of the Accused Products further comprise the functionality to "in a case that the bit length of the field is variable, determine the bit length of the field according to one of the first parameter that is associated with the first BWP and the second parameter that is associated with the second BWP." based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

## 7.3.1.2.3     Format 1_2

DCI format 1_2 is used for the scheduling of PDSCH in one cell.

...

-   HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format1-2*

**Source:** 38.212

84.     Each of the Accused Products further comprise the functionality to "receive, from the BS, downlink control information (DCI) having a DCI format, the DCI indicating one of a data reception and a data transmission on a BWP, and the DCI including a field indicating a hybrid automatic repeat request (HARQ) process number to be applied by the UE for the data reception or data transmission" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

COMPLAINT FOR PATENT INFRINGEMENT                                    Page 30

3.3    Abbreviations

...

DCI                    Downlink control information

...

PUSCH              Physical uplink shared channel

7.3.1.1.2          Format 0_1

DCI format 0_1 is used for the scheduling of one or multiple PUSCH in one cell, or indicating CG downlink feedback information (CG-DFI) to a UE.

..

- Bandwidth part indicator – 0, 1 or 2 bits as determined by the number of UL BWPs $n_{BWP,RRC}$ configured by higher layers, excluding the initial UL bandwidth part. The bitwidth for this field is determined as $\lceil \log_2(n_{BWP}) \rceil$ bits, where

...

- HARQ process number – 4 bits

**Source**: 38.212

Also:

3.3    Abbreviations

...

DCI                    Downlink control information

...

PUSCH              Physical uplink shared channel

7.3.1.1.3          Format 0_2

DCI format 0_2 is used for the scheduling of PUSCH in one cell.

..

- Bandwidth part indicator – 0, 1 or 2 bits as determined by the number of UL BWPs $n_{BWP,RRC}$ configured by higher layers, excluding the initial UL bandwidth part. The bitwidth for this field is determined as $\lceil \log_2(n_{BWP}) \rceil$ bits, where

...

- HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format0-2*

**Source**: 38.212

85.    Each of the Accused Products further comprise the functionality to "determine whether a bit length of the field is one of fixed or variable according to the DCI format" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

7.3.1.1.2          Format 0_1

DCI format 0_1 is used for the scheduling of one or multiple PUSCH in one cell, or indicating CG downlink feedback information (CG-DFI) to a UE.

...

- HARQ process number – 4 bits

7.3.1.1.3          Format 0_2

DCI format 0_2 is used for the scheduling of PUSCH in one cell.

...

- HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format1-2*

**Source**: 38.212

86.     Each of the Accused Products further comprise the functionality to "in a case that that the bit length of the field is variable, determine the bit length of the field according to one of the first parameter that is associated with the first BPWP and the second parameter that is associated with the second BWP" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.2.0:

7.3.1.1.3          Format 0_2

DCI format 0_2 is used for the scheduling of PUSCH in one cell.

...

- HARQ process number – 0, 1, 2, 3 or 4 bits determined by higher layer parameter *harq-ProcessNumberSizeForDCI-Format0-2*

**Source**: 38.212

87.    Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '981 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '981 Patent.

88.    Lenovo has had knowledge and notice of the '981 Patent since at least April 18, 2023.

89.    Lenovo indirectly infringes the '981 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '981 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement, Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '981 Patent. Lenovo performs these affirmative acts with knowledge of the '981 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '981 Patent.

90.    Lenovo also indirectly infringes the '981 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the

Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '981 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '981 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '981 Patent. Lenovo performs these affirmative acts with knowledge of the '981 Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '981 Patent.

91. Lenovo's infringement of the '981 Patent has damaged and will continue to damage Hannibal.

92. Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

93. Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '981 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '981 Patent as of April 18, 2023. Lenovo has thus had actual notice of infringement of the '981 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

94. This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VII.    FOURTH CLAIM FOR RELIEF - INFRINGEMENT OF THE '597 PATENT

95. Hannibal incorporates paragraphs 1 through 94 as though fully set forth herein.

96. The '597 Patent includes fourteen (14) claims.

97.     Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '597 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '597 Patent including, but not limited to, at least the Accused Products.

98.     As shown below, Lenovo and its Accused Products infringe at least claim 8 of the '597 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.6.0 "Physical Layer Procedures for Control,"[10] 3GPP TS 38.213 version 16.6.0 "Physical Layer Procedures for Control,"[11] 3GPP TS 38.321 version 16.4.0 "Medium Access Control (MAC) Protocol Specification,"[12] 3GPP TS 38.300 version 16.5.0 "NR and NG-RAN Overall Description,"[13] and 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol Specification."[14]

99.     For example, and to the extent the preamble of claim 1 is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as described by the 3GPP 5G Standard for "monitoring a physical downlink control channel (PDCCH) for power saving signaling" based on their compatibility with and practice of the 3GPP 5G Standard, including but not limited to 3GPP TS 38.213 version 16.6.0:

---

[10] 3GPP TS 38.213 version 16.6.0 "Physical layer procedures for control" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.213/38213-g60.zip.
[11] 3GPP TS 38.212 version 16.6.0 "Multiplexing and channel coding" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.212/38212-g60.zip.
[12] 3GPP TS 38.321 version 16.4.0 "Medium Access Control (MAC) protocol specification" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.321/38321-g40.zip.
[13] 3GPP TS 38.300 version 16.5.0 "NR and NG-RAN Overall description" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.300/38300-g50.zip.
[14] 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol specification" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g80.zip.

COMPLAINT FOR PATENT INFRINGEMENT                                      Page 35

## 10.3    PDCCH monitoring indication and dormancy/non-dormancy behaviour for SCells

A UE configured with DRX mode operation [11, TS 38.321] can be provided the following for detection of a DCI format 2_6 in a PDCCH reception on the PCell or on the SpCell [12, TS 38.331]

-   a PS-RNTI for DCI format 2_6 by *ps-RNTI*

**Source**: 38.213

### 7.3.1.3.7    Format 2_6

DCI format 2_6 is used for notifying the power saving information outside DRX Active Time for one or more UEs.

The following information is transmitted by means of the DCI format 2_6 with CRC scrambled by PS-RNTI:

**Source**: 38.213

100.    Each of the Accused Products include a transceiver, processor, and memory as set forth above and in this Complaint.

101.    Each of the Accused Products further comprise the functionality to "receive, via the transceiver, a discontinuous reception (DRX) configuration from a base station (BS) to configure the UE to monitor a scheduling signal on the PDCCH within a DRX active time" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.321 version 16.4.0:

## 5.7    Discontinuous Reception (DRX)

The MAC entity may be configured by RRC with a DRX functionality that controls the UE's PDCCH monitoring activity for the MAC entity's C-RNTI, CI-RNTI, CS-RNTI, INT-RNTI, SFI-RNTI, SP-CSI-RNTI, TPC-PUCCH-RNTI, TPC-PUSCH-RNTI, TPC-SRS-RNTI, and AI-RNTI. When using DRX operation, the MAC entity shall also monitor PDCCH according to requirements found in other clauses of this specification. When in RRC_CONNECTED, if DRX is configured, for all the activated Serving Cells, the MAC entity may monitor the PDCCH discontinuously using the DRX operation specified in this clause; otherwise the MAC entity shall monitor the PDCCH as specified in TS 38.213 [6].

**Source**: 38.321

102.    Each of the Accused Products further comprise the functionality to "receive, via the transceiver,  a power saving signaling configuration from the BS to configure the UE to monitor the power saving signaling on the PDCCH, the power saving signaling configuration comprising a time offset between a nearest power saving signaling and a start of a DRX on-duration time" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.331 version 16.8.0 and 3GPP TS 38.213 version 16.6.0:

–            *PhysicalCellGroupConfig*

The IE *PhysicalCellGroupConfig* is used to configure cell-group specific L1 parameters.

**PhysicalCellGroupConfig information element**

```
DCP-Config-r16 ::=              SEQUENCE {                                                    DCP          DCI with CRC scrambled by PS-RNTI
    ps-RNTI-r16                      RNTI-Value,
    ps-Offset-r16                    INTEGER (1..120),
    sizeDCI-2-6-r16                  INTEGER (1..maxDCI-2-6-Size-r16),
    ps-PositionDCI-2-6-r16           INTEGER (0..maxDCI-2-6-Size-1-r16),
    ps-WakeUp-r16                    ENUMERATED {true}                             OPTIONAL,  -- Need S
    ps-TransmitPeriodicL1-RSRP-r16   ENUMERATED {true}                             OPTIONAL,  -- Need S
    ps-TransmitOtherPeriodicCSI-r16  ENUMERATED {true}                             OPTIONAL   -- Need S
}
```

| | |
|---|---|
| **ps-RNTI** | |
| RNTI value for scrambling CRC of DCI format 2-6 used for power saving (see TS 38.213 [13], clause 10.1). | |
| **ps-Offset** | |
| The start of the search-time of DCI format 2-6 with CRC scrambled by PS-RNTI relative to the start of the *drx-onDurationTimer* of Long DRX (see TS 38.213 [13], clause 10.3). Value in multiples of 0.125ms (milliseconds). 1 corresponds to 0.125 ms, 2 corresponds to 0.25 ms, 3 corresponds to 0.375 ms and so on. | |
| **ps-WakeUp** | |
| Indicates the UE to wake-up if DCI format 2-6 is not detected outside active time (see TS 38.321 [3], clause 5.7). If the field is absent, the UE does not wake-up if DCI format 2-6 is not detected outside active time. | |
| **ps-PositionDCI-2-6** | |
| Starting position of UE wakeup and SCell dormancy indication in DCI format 2-6 (see TS 38.213 [13], clause 10.3). | |
| **ps-TransmitPeriodicL1-RSRP** | |
| Indicates the UE to transmit periodic L1-RSRP report(s) when the *drx-onDurationTimer* does not start (see TS 38.321 [3], clause 5.7). If the field is absent, the UE does not transmit periodic L1-RSRP report(s) when the *drx-onDurationTimer* does not start. | |
| **ps-TransmitOtherPeriodicCSI** | |
| Indicates the UE to transmit periodic CSI report(s) other than L1-RSRP reports when the *drx-onDurationTimer* does not start (see TS 38.321 [3], clause 5.7). If the field is absent, the UE does not transmit periodic CSI report(s) other than L1-RSRP reports when the *drx-onDurationTimer* does not start. | **Source**: 38.331 |

Also:

## 10.3  PDCCH monitoring indication and dormancy/non-dormancy behaviour for SCells

A UE configured with DRX mode operation [11, TS 38.321] can be provided the following for detection of a DCI format 2_6 in a PDCCH reception on the PCell or on the SpCell [12, TS 38.331]

- a PS-RNTI for DCI format 2_6 by *ps-RNTI*

- a number of search space sets, by *dci-Format2-6*, to monitor PDCCH for detection of DCI format 2_6 on the active DL BWP of the PCell or of the SpCell according to a common search space as described in clause 10.1

- a location in DCI format 2_6 of a Wake-up indication bit by *ps-PositionDCI-2-6*

  - a '0' value for the Wake-up indication bit, when reported to higher layers, indicates to not start the *drx-onDurationTimer* for the next long DRX cycle [11, TS 38.321]

  - a '1' value for the Wake-up indication bit, when reported to higher layers, indicates to start the *drx-onDurationTimer* for the next long DRX cycle [11, TS 38.321]

- an offset by *ps-Offset* indicating a time, where the UE starts monitoring PDCCH for detection of DCI format 2_6 according to the number of search space sets, prior to a slot where the *drx-onDurationTimer* would start on the PCell or on the SpCell [11, TS 38.321]

**Source**: 38.213

103.    Each of the Accused Products further comprise the functionality to "monitor the PDCCH for the power saving signaling when the time offset is greater than a required time duration" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.212 version 16.6.0 and 3GPP TS 38.213 version 16.6.0:

7.3.1.3.7        Format 2_6

DCI format 2_6 is used for notifying the power saving information outside DRX Active Time for one or more UEs.

The following information is transmitted by means of the DCI format 2_6 with CRC scrambled by PS-RNTI:

**Source**: 38.212

10.3    PDCCH monitoring indication and dormancy/non-dormancy behaviour for SCells

If a UE reports for an active DL BWP a *MinTimeGap* value that is X slots prior to the beginning of a slot where the UE would start the *drx-onDurationTimer*, the UE is not required to monitor PDCCH for detection of DCI format 2_6 during the X slots, where X corresponds to the *MinTimeGap* value of the SCS of the active DL BWP in Table 10.3-1.

Table 10.3-1 Minimum time gap value X

| SCS (kHz) | Minimum Time Gap X (slots) | |
|---|---|---|
| | Value 1 | Value 2 |
| 15 | 1 | 3 |
| 30 | 1 | 6 |
| 60 | 1 | 12 |
| 120 | 2 | 24 |

If a UE is provided search space sets to monitor PDCCH for detection of DCI format 2_6 in the active DL BWP of the PCell or of the SpCell and the UE detects DCI format 2_6, the physical layer of a UE reports the value of the Wake-up indication bit for the UE to higher layers [11, TS 38.321] for the next long DRX cycle.

**Source**: 38.213

104.    Each of the Accused Products further comprise the functionality to "wake up to monitor the PDCCH for the scheduling signal in the DRX active time in accordance to the DRX configuration in response to receiving power saving signaling indicating to wake up" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to and 3GPP TS 38.213 version 16.6.0 and 3GPP TS 38.321 version 16.4.0:

## 10.3    PDCCH monitoring indication and dormancy/non-dormancy behaviour for SCells

A UE configured with DRX mode operation [11, TS 38.321] can be provided the following for detection of a DCI format 2_6 in a PDCCH reception on the PCell or on the SpCell [12, TS 38.331]

- a location in DCI format 2_6 of a Wake-up indication bit by *ps-PositionDCI-2-6*

  - a '0' value for the Wake-up indication bit, when reported to higher layers, indicates to not start the *drx-onDurationTimer* for the next long DRX cycle [11, TS 38.321]

  - a '1' value for the Wake-up indication bit, when reported to higher layers, indicates to start the *drx-onDurationTimer* for the next long DRX cycle [11, TS 38.321]

If a UE is provided search space sets to monitor PDCCH for detection of DCI format 2_6 in the active DL BWP of the PCell or of the SpCell and the UE detects DCI format 2_6, the physical layer of a UE reports the value of the Wake-up indication bit for the UE to higher layers [11, TS 38.321] for the next long DRX cycle.

**Source**: 38.213

Also:

## 11    UE Power Saving

The PDCCH monitoring activity of the UE in RRC connected mode is governed by DRX, BA, and DCP.



**Figure 11-1: DRX Cycle**

In addition, the UE may be indicated, when configured accordingly, whether it is required to monitor or not the PDCCH during the next occurrence of the on-duration by a DCP monitored on the active BWP. If the UE does not detect a DCP on the active BWP, it does not monitor the PDCCH during the next occurrence of the on-duration, unless it is explicitly configured to do so in that case.

| DCP | DCI with CRC scrambled by PS-RNTI |
| --- | --- |

**Source**: 38.321

Also:

**5.7   Discontinuous Reception (DRX)**

The MAC entity may be configured by RRC with a DRX functionality that controls the UE's PDCCH monitoring activity for the MAC entity's C-RNTI, CI-RNTI, CS-RNTI, INT-RNTI, SFI-RNTI, SP-CSI-RNTI, TPC-PUCCH-RNTI, TPC-PUSCH-RNTI, TPC-SRS-RNTI, and AI-RNTI. When using DRX operation, the MAC entity shall also monitor PDCCH according to requirements found in other clauses of this specification. When in RRC_CONNECTED, if DRX is configured, for all the activated Serving Cells, the MAC entity may monitor the PDCCH discontinuously using the DRX operation specified in this clause; otherwise the MAC entity shall monitor the PDCCH as specified in TS 38.213 [6].

Source: 38.321

105.    Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '597 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '597 Patent.

106.    Lenovo has had knowledge and notice of the '597 Patent since at least November 14, 2024.

107.    Lenovo indirectly infringes the '597 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '597 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement, Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '597 Patent. Lenovo performs these affirmative acts with knowledge of the

'597 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '597 Patent.

108.    Lenovo also indirectly infringes the '597 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '597 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '597 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '597 Patent. Lenovo performs these affirmative acts with knowledge of the '597 Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '597 Patent.

109.    Lenovo's infringement of the '597 Patent has damaged and will continue to damage Hannibal.

110.    Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

111.    Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '597 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '597 Patent as of November 14, 2024. Lenovo has thus had actual notice of infringement of the '597 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

112.    This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## VIII.    FIFTH CLAIM FOR RELIEF - INFRINGEMENT OF THE '363 PATENT

113.    Hannibal incorporates paragraphs 1 through 112 as though fully set forth herein.

114.    The '363 Patent includes ten (10) claims.

115.    Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '363 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '363 Patent including, but not limited to, at least the Accused Products.

116.    As shown below, Lenovo and its Accused Products infringe at least claim 1 of the '363 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.213 version 16.6.0 "Physical Layer Procedures for Control,"[15] 3GPP TS 38.214 version 16.5.0 "Physical Layer Procedures for Data,"[16] 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol Specification,"[17] and 3GPP TS 23.501 version 16.5.0 "System Architecture for the 5G System (5GS)."[18]

117.    For example, and to the extent the preamble of claim 1 is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as

---

[15] 3GPP TS 38.213 version 16.6.0 "Physical layer procedures for control" can be found at
https://www.3gpp.org/ftp/Specs/archive/38_series/38.213/38213-g60.zip.
[16] 3GPP TS 38.214 version 16.5.0 "Physical layer procedures for data" can be found at
https://www.3gpp.org/ftp/Specs/archive/38_series/38.214/38214-g50.zip.
[17] 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol specification" can be found at
https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g80.zip.
[18] 3GPP TS 23.501 version 16.5.0 "System architecture for the 5G System (5GS)" can be found at
https://www.etsi.org/deliver/etsi_ts/123500_123599/123501/16.05.00_60/ts_123501v160500p.pdf.

described by the 3GPP 5G Standard for wireless communication based on their compatibility with and practice of the 3GPP 5G Standard, including but not limited to 3GPP TS 23.501 version 16.5.0:



Figure 4.2.3-1: 5G System architecture

**Source**: 23.501

118.    Each of the Accused Products includes memory and a processor configured to execute instructions as set forth above and in this Complaint.

119.    Each of the Accused Products further comprise the functionality to "receive, from a base station (BS), a first Radio Resource Control (RRC) configuration to configure a first semi-persistent scheduling (SPS) physical downlink shared channel (PDSCH)" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.331 version 16.8.0 and 3GPP TS 38.213 version 16.6.0:

6.3.2    Radio resource control information elements

–        BWP-DownlinkDedicated

The IE *BWP-DownlinkDedicated* is used to configure the dedicated (UE specific) parameters of a downlink BWP.

–        SPS-Config

The IE *SPS-Config* is used to configure downlink semi-persistent transmission. Multiple Downlink SPS configurations may be configured in one BWP of a serving cell.

**SPS-Config information element**

```
-- ASN1START
-- TAG-SPS-CONFIG-START

SPS-Config ::=              SEQUENCE {
    periodicity            ENUMERATED {ms10, ms20, ms32, ms40, ms64, ms80, ms128, ms160, ms320, ms640,
                                       spare6, spare5, spare4, spare3, spare2, spare1},
    nrofHARQ-Processes     INTEGER (1..8),
    n1PUCCH-AN             PUCCH-ResourceId                        OPTIONAL,  -- Need M
    mcs-Table              ENUMERATED {qam64LowSE}                 OPTIONAL,  -- Need S
    ...,
    [[
    sps-ConfigIndex-r16        SPS-ConfigIndex-r16                 OPTIONAL,  -- Cond SPS-List
    harq-ProcID-Offset-r16     INTEGER (0..15)                     OPTIONAL,  -- Need R
    periodicityExt-r16         INTEGER (1..5120)                   OPTIONAL,  -- Need R
    harq-CodebookID-r16        INTEGER (1..2)                      OPTIONAL,  -- Need R
    pdsch-AggregationFactor-r16 ENUMERATED {n1, n2, n4, n8 }       OPTIONAL,  -- Need S
```

**Source**: 38.331

Also:

9.1      HARQ-ACK codebook determination

If a UE receives a PDSCH without receiving a corresponding PDCCH, or if the UE receives a PDCCH indicating a SPS PDSCH release, the UE generates one corresponding HARQ-ACK information bit. If the UE generates two HARQ-ACK codebooks, the UE is indicated by *harq-CodebookID*, per SPS PDSCH configuration, a HARQ-ACK codebook index for multiplexing the corresponding HARQ-ACK information bit.

**Source**: 38.213

120.    Each of the Accused Products further comprise the functionality to "receive, from the BS, a second RRC configuration to configure a second SPS PDSCH" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.331 version 16.8.0:

6.3.2    Radio resource control information elements

–        BWP-DownlinkDedicated

The IE *BWP-DownlinkDedicated* is used to configure the dedicated (UE specific) parameters of a downlink BWP.

–        SPS-Config

The IE *SPS-Config* is used to configure downlink semi-persistent transmission. Multiple Downlink SPS configurations may be configured in one BWP of a serving cell.

**SPS-Config information element**

```
-- ASN1START
-- TAG-SPS-CONFIG-START

SPS-Config ::=            SEQUENCE {
    periodicity              ENUMERATED {ms10, ms20, ms32, ms40, ms64, ms80, ms128, ms160, ms320, ms640,
                                         spare6, spare5, spare4, spare3, spare2, spare1},
    nrofHARQ-Processes       INTEGER (1..8),
    n1PUCCH-AN               PUCCH-ResourceId                                    OPTIONAL,   -- Need M
    mcs-Table                ENUMERATED {qam64LowSE}                             OPTIONAL,   -- Need S
    ...,
    [[
    sps-ConfigIndex-r16      SPS-ConfigIndex-r16                                 OPTIONAL,   -- Cond SPS-List
    harq-ProcID-Offset-r16   INTEGER (0..15)                                     OPTIONAL,   -- Need R
    periodicityExt-r16       INTEGER (1..5120)                                   OPTIONAL,   -- Need R
    harq-CodebookID-r16      INTEGER (1..2)                                      OPTIONAL,   -- Need R
    pdsch-AggregationFactor-r16  ENUMERATED {n1, n2, n4, n8 }                    OPTIONAL,   -- Need S
```

**Source**: 38.331

121.    Each of the Accused Products further comprise the functionality to "generate first uplink control information (UCI) in response to the first SPS PDSCH reception" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP TS 38.213 version 16.6.0:

## 9    UE procedure for reporting control information

A PUSCH or a PUCCH transmission other than PUCCH transmissions with SL HARQ-ACK reports, including repetitions if any, can be of priority index 0 or of priority index 1. For a configured grant PUSCH transmission, a UE determines a priority index from *phy-PriorityIndex*, if provided. For a PUCCH transmission with HARQ-ACK information corresponding to a SPS PDSCH reception or a SPS PDSCH release, a UE determines a priority index from *harq-CodebookID*, if provided. For a PUCCH transmission with SR, a UE determines the corresponding priority as described in clause 9.2.4. For a PUSCH transmission with semi-persistent CSI report, a UE determines a priority index from a priority indicator field, if provided, in a DCI format that activates the semi-persistent CSI report. If a priority

### 9.1    HARQ-ACK codebook determination

If a UE is provided *pdsch-HARQ-ACK-CodebookList*, the UE can be indicated by *pdsch-HARQ-ACK-CodebookList* to generate one or two HARQ-ACK codebooks. If the UE is indicated to generate one HARQ-ACK codebook, the HARQ-ACK codebook is associated with a PUCCH of priority index 0. If a UE is provided *pdsch-HARQ-ACK-CodebookList*, the UE multiplexes in a same HARQ-ACK codebook only HARQ-ACK information associated with a same priority index. If the UE is indicated to generate two HARQ-ACK codebooks

If a UE receives a PDSCH without receiving a corresponding PDCCH, or if the UE receives a PDCCH indicating a SPS PDSCH release, the UE generates one corresponding HARQ-ACK information bit. If the UE generates two HARQ-ACK codebooks, the UE is indicated by *harq-CodebookID*, per SPS PDSCH configuration, a HARQ-ACK codebook index for multiplexing the corresponding HARQ-ACK information bit.

**Source**: 38.213

122.    Each of the Accused Products further comprise the functionality "wherein the RRC configuration to configure the SPS PDSCH includes a first parameter that indicates a priority of the first UCI" based on their compatibility with and practice of the 3GPP 5G Standard. As shown

below , this functionality is described in the 3GPP 5G Standard, including but not limited 3GPP

TS 38.213 version 16.6.0 and 3GPP TS 38.331 version 16.8.0:

## 9      UE procedure for reporting control information

A PUSCH or a PUCCH transmission other than PUCCH transmissions with SL HARQ-ACK reports, including repetitions if any, can be of priority index 0 or of priority index 1. For a configured grant PUSCH transmission, a UE determines a priority index from *phy-PriorityIndex*, if provided. For a PUCCH transmission with HARQ-ACK information corresponding to a SPS PDSCH reception or a SPS PDSCH release, a UE determines a priority index from *harq-CodebookID*, if provided. For a PUCCH transmission with SR, a UE determines the corresponding priority as described in clause 9.2.4. For a PUSCH transmission with semi-persistent CSI report, a UE determines a priority index from a priority indicator field, if provided, in a DCI format that activates the semi-persistent CSI report. If a priority

### 9.1      HARQ-ACK codebook determination

If a UE is provided *pdsch-HARQ-ACK-CodebookList*, the UE can be indicated by *pdsch-HARQ-ACK-CodebookList* to generate one or two HARQ-ACK codebooks. If the UE is indicated to generate one HARQ-ACK codebook, the HARQ-ACK codebook is associated with a PUCCH of priority index 0. If a UE is provided *pdsch-HARQ-ACK-CodebookList*, the UE multiplexes in a same HARQ-ACK codebook only HARQ-ACK information associated with a same priority index. If the UE is indicated to generate two HARQ-ACK codebooks

-    a first HARQ-ACK codebook is associated with a PUCCH of priority index 0 and a second HARQ-ACK codebook is associated with a PUCCH of priority index 1

If a UE receives a PDSCH without receiving a corresponding PDCCH, or if the UE receives a PDCCH indicating a SPS PDSCH release, the UE generates one corresponding HARQ-ACK information bit. If the UE generates two HARQ-ACK codebooks, the UE is indicated by *harq-CodebookID*, per SPS PDSCH configuration, a HARQ-ACK codebook index for multiplexing the corresponding HARQ-ACK information bit.

**Source**: 38.213

Also:

### 6.3.2      Radio resource control information elements

–      *BWP-DownlinkDedicated*

The IE *BWP-DownlinkDedicated* is used to configure the dedicated (UE specific) parameters of a downlink BWP.

–      *SPS-Config*

The IE *SPS-Config* is used to configure downlink semi-persistent transmission. Multiple Downlink SPS configurations may be configured in one BWP of a serving cell.

**SPS-Config information element**

```
-- ASN1START
-- TAG-SPS-CONFIG-START

SPS-Config ::=                SEQUENCE {
    periodicity                ENUMERATED {ms10, ms20, ms32, ms40, ms64, ms80, ms128, ms160, ms320, ms640,
                                          spare6, spare5, spare4, spare3, spare2, spare1},
    nrofHARQ-Processes         INTEGER (1..8),
    n1PUCCH-AN                 PUCCH-ResourceId                              OPTIONAL,    -- Need M
    mcs-Table                  ENUMERATED {qam64LowSE}                       OPTIONAL,    -- Need S
    ...,
    [[
    sps-ConfigIndex-r16        SPS-ConfigIndex-r16                           OPTIONAL,    -- Cond SPS-List
    harq-ProcID-Offset-r16     INTEGER (0..15)                               OPTIONAL,    -- Need R
    periodicityExt-r16         INTEGER (1..5120)                             OPTIONAL,    -- Need R
    harq-CodebookID-r16        INTEGER (1..2)                                OPTIONAL,    -- Need R
    pdsch-AggregationFactor-r16 ENUMERATED {n1, n2, n4, n8 }                 OPTIONAL,    -- Need S
```

**SPS-Config field descriptions**

*harq-CodebookID*
Indicates the HARQ-ACK codebook index for the corresponding HARQ-ACK codebook for SPS PDSCH and ACK for SPS PDSCH release.

**Source**: 38.331

123.    Each of the Accused Products further comprise the functionality "wherein the second RRC configuration includes a second parameter that indicates a prioritized SPS PDSCH when the first SPS PDSCH and the second SPS PDSCH partially or fully overlap in the time domain" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below

, this functionality is described in the 3GPP 5G Standard, including but not limited to  3GPP TS 38.331 version 16.8.0 and 3GPP TS 38.214 version 16.5.0:

### 6.3.2    Radio resource control information elements

– *BWP-DownlinkDedicated*

The IE *BWP-DownlinkDedicated* is used to configure the dedicated (UE specific) parameters of a downlink BWP.

– *SPS-Config*

The IE *SPS-Config* is used to configure downlink semi-persistent transmission. Multiple Downlink SPS configurations may be configured in one BWP of a serving cell.

**SPS-Config** information element

```
-- ASN1START
-- TAG-SPS-CONFIG-START

SPS-Config ::=              SEQUENCE {
    periodicity                ENUMERATED {ms10, ms20, ms32, ms40, ms64, ms80, ms128, ms160, ms320, ms640,
                               spare6, spare5, spare4, spare3, spare2, spare1},
    nrofHARQ-Processes         INTEGER (1..8),
    n1PUCCH-AN                 PUCCH-ResourceId                               OPTIONAL,   -- Need M
    mcs-Table                  ENUMERATED {qam64LowSE}                        OPTIONAL,   -- Need S
    ...,
    [[
    sps-ConfigIndex-r16        SPS-ConfigIndex-r16                            OPTIONAL,   -- Cond SPS-List
    harq-ProcID-Offset-r16     INTEGER (0..15)                                OPTIONAL,   -- Need R
    periodicityExt-r16         INTEGER (1..5120)                              OPTIONAL,   -- Need R
    harq-CodebookID-r16        INTEGER (1..2)                                 OPTIONAL,   -- Need R
    pdsch-AggregationFactor-r16 ENUMERATED {n1, n2, n4, n8 }                  OPTIONAL    -- Need S
```

**sps-ConfigIndex**
Indicates the index of one of multiple SPS configurations.                          **Source**: 38.331

Also:

### 5.1    UE procedure for receiving the physical downlink shared channel

If more than one PDSCH on a serving cell each without a corresponding PDCCH transmission are in a slot, after resolving overlapping with symbols in the slot indicated as uplink by *tdd-UL-DL-ConfigurationCommon*, or by *tdd-UL-DL-ConfigurationDedicated*, a UE receives one or more PDSCHs without corresponding PDCCH transmissions in the slot as specified below.

– Step 0: set $j=0$, where $j$ is the number of selected PDSCH(s) for decoding. $Q$ is the set of activated PDSCHs without corresponding PDCCH transmissions within the slot

– Step 1: A UE receives one PDSCH with the lowest configured *sps-ConfigIndex* within $Q$, set $j=j+1$. Designate the received PDSCH as survivor PDSCH.

– Step 2: The survivor PDSCH in step 1 and any other PDSCH(s) overlapping (even partially) with the survivor PDSCH in step 1 are excluded from $Q$.

– Step 3: Repeat step 1 and 2 until $Q$ is empty or $j$ is equal to the number of unicast PDSCHs in a slot supported by the UE

**Source**: 38.214

124.    Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '363 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '363 Patent.

125.    Lenovo has had knowledge and notice of the '363 Patent since at least November 14, 2024.

126.    Lenovo indirectly infringes the '363 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '363 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement, Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '363 Patent. Lenovo performs these affirmative acts with knowledge of the '363 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '363 Patent.

127.    Lenovo also indirectly infringes the '363 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '363 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '363 Patent, are not staple articles or commodities of commerce, have no substantial non-

infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '363 Patent. Lenovo performs these affirmative acts with knowledge of the '363Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '363 Patent.

128.    Lenovo's infringement of the '363 Patent has damaged and will continue to damage Hannibal.

129.    Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

130.    Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '363 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '363 Patent as of November 14, 2024. Lenovo has thus had actual notice of infringement of the '363 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

131.    This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## IX.    SIXTH CLAIM FOR RELIEF - INFRINGEMENT OF THE '186 PATENT

132.    Hannibal incorporates paragraphs 1 through 131 as though fully set forth herein.

133.    The '186 Patent includes fourteen (14) claims.

134.    Lenovo infringes, contributes to the infringement of, and/or induces infringement of the '186 Patent by making, using, selling, offering for sale, exporting from, and/or importing into the United States products and/or methods covered by one or more claims of the '186 Patent including, but not limited to, at least the Accused Products.

135.     As shown below, Lenovo and its Accused Products infringe at least claim 8 of the '186 Patent by virtue of their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 16.5.0 "Physical Layer Procedures for Data,"[19] 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol Specification,"[20] 3GPP TS 38.213 version 16.6.0 "Physical Layer Procedures for Control,"[21] and 3GPP TS 38.212 version 16.6.0 "Multiplexing and Channel Coding."[22]

136.     For example, and to the extent the preamble is limiting, each of the Accused Products, such as smartphones, notebooks, and tablets, are "user equipment (UE)" as described by the 3GPP 5G Standard that include the claimed power saving functionality based on their compatibility with and practice of the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 16.50.0:

### 5.1.2   Resource allocation

#### 5.1.2.1      Resource allocation in time domain

When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP it applies a minimum scheduling offset restriction indicated by the 'Minimum applicable scheduling offset indicator' field in DCI format 1_1 or DCI format 0_1 if the same field is available. When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP and it has not received 'Minimum applicable scheduling offset indicator' field in DCI format 0_1 or 1_1, the UE shall apply a minimum scheduling offset restriction indicated based on 'Minimum applicable scheduling offset indicator' value '0'. When the minimum scheduling offset restriction is applied the UE is not expected to be scheduled with a DCI in slot $n$ to receive a PDSCH scheduled with C-RNTI, CS-RNTI or MCS-C-RNTI with $K_0$ smaller than $\left\lfloor K_{0min} \cdot \frac{2^{\mu'}}{2^{\mu}} \right\rfloor$.

**Source**: 38.214

---

[19] 3GPP TS 38.214 version 16.5.0 "Physical layer procedures for data" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.214/38214-g50.zip.

[20] 3GPP TS 38.331 version 16.8.0 "Radio Resource Control (RRC); Protocol specification" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.331/38331-g80.zip.

[21] 3GPP TS 38.213 version 16.6.0 "Physical layer procedures for control" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.213/38213-g60.zip.

[22] 3GPP TS 38.212 version 16.6.0 "Multiplexing and channel coding" can be found at https://www.3gpp.org/ftp/Specs/archive/38_series/38.212/38212-g60.zip.

137.    Each of the Accused Products includes a processor and memory as set forth above and in this Complaint.

138.    Each of the Accused Products further comprise the functionality to "receive, from a first base station, a first power saving signal comprising a minimum scheduling offset restriction between a physical downlink control channel (PDCCH) and a physical downlink shared channel (PDSCH)" based on their compatibility with and practice of the 3GPP 5G Standard.  As shown below , this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.214 version 16.5.0 and 3GPP TS 38.331 version 16.8.0:



**Source**: 38.331

Also:

## 5.1.2    Resource allocation

### 5.1.2.1    Resource allocation in time domain

When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP it applies a minimum scheduling offset restriction indicated by the 'Minimum applicable scheduling offset indicator' field in DCI format 1_1 or DCI format 0_1 if the same field is available. When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP and it has not received 'Minimum applicable scheduling offset indicator' field in DCI format 0_1 or 1_1, the UE shall apply a minimum scheduling offset restriction indicated based on 'Minimum applicable scheduling offset indicator' value '0'. When the minimum scheduling offset restriction is applied the UE is not expected to be scheduled with a DCI in slot $n$ to receive a PDSCH scheduled with C-RNTI, CS-RNTI or MCS-C-RNTI with $K_0$ smaller than $\left\lfloor K_{0min} \cdot \frac{2^{\mu'}}{2^{\mu}} \right\rfloor$,

**Source**: 38.214

| PDSCH-TimeDomainResourceAllocation field descriptions |
|---|
| k0 |
| Slot offset between DCI and its scheduled PDSCH (see TS 38.214 [19], clause 5.1.2.1) When the field is absent the UE applies the value 0. |

**Source**: 38.331

---

COMPLAINT FOR PATENT INFRINGEMENT

139.   Each of the Accused Products further comprise the functionality to "receive, from a second base station, a first downlink control information (DCI) comprising a second power saving signal for activating the minimum scheduling offset restriction" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in the 3GPP 5G Standard, including but not limited to 3GPP TS 38.213 version 16.6.0, 3GPP 38.214 version 16.5.0, 3GPP TS 38.331 version 16.8.0, and 3GPP TS 38.212 version 16.6.0:

## 10   UE procedure for receiving control information

A UE monitors a set of PDCCH candidates in one or more CORESETs on the active DL BWP on each activated serving cell configured with PDCCH monitoring according to corresponding search space sets where monitoring implies decoding each PDCCH candidate according to the monitored DCI formats.

**Source:** 38.213

Also:

### 5.1.2   Resource allocation

### 5.1.2.1   Resource allocation in time domain

When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP it applies a minimum scheduling offset restriction indicated by the 'Minimum applicable scheduling offset indicator' field in DCI format 1_1 or DCI format 0_1 if the same field is available. When the UE is configured with *minimumSchedulingOffsetK0* in an active DL BWP and it has not received 'Minimum applicable scheduling offset indicator' field in DCI format 0_1 or 1_1, the UE shall apply a minimum scheduling offset restriction indicated based on 'Minimum applicable scheduling offset indicator' value '0'. When the minimum scheduling offset restriction is applied the UE is not expected to be scheduled with a DCI in slot $n$ to receive a PDSCH scheduled with C-RNTI, CS-RNTI or MCS-C-RNTI with $K_0$ smaller than $\left\lceil K_{0min} \cdot \frac{2^{\mu'}}{2^{\mu}} \right\rceil$.

**Source:** 38.214

| *PDSCH-TimeDomainResourceAllocation* field descriptions |
| --- |
| k0 |
| Slot offset between DCI and its scheduled PDSCH (see TS 38.214 [19], clause 5.1.2.1) When the field is absent the UE applies the value 0. |

**Source:** 38.331

Also:

7.3.1.2.2    Format 1_1

DCI format 1_1 is used for the scheduling of PDSCH in one cell.

The following information is transmitted by means of the DCI format 1_1 with CRC scrambled by C-RNTI or CS-RNTI or MCS-C-RNTI:

- Minimum applicable scheduling offset indicator – 0 or 1 bit

  - 0 bit if higher layer parameter *minimumSchedulingOffsetK0* is not configured;

  - 1 bit if higher layer parameter *minimumSchedulingOffsetK0* is configured. The 1 bit indication is used to determine the minimum applicable K0 for the active DL BWP and the minimum applicable K2 value for the active UL BWP, if configured respectively, according to Table 7.3.1.1.2-33. If the minimum applicable K0 is indicated, the minimum applicable value of the aperiodic CSI-RS triggering offset for an active DL BWP shall be the same as the minimum applicable K0 value.

**Source**: 38.212

140.    Each of the Accused Products further comprise the functionality to "determine a time offset between the second power saving signal and a hybrid automatic repeat request (HARQ) feedback from the DCI" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in 3GPP TS 38.212 version 16.6.0:

7.3.1.2.2    Format 1_1

DCI format 1_1 is used for the scheduling of PDSCH in one cell.

The following information is transmitted by means of the DCI format 1_1 with CRC scrambled by C-RNTI or CS-RNTI or MCS-C-RNTI:

- Time domain resource assignment – 0, 1, 2, 3, or 4 bits as defined in Clause 5.1.2.1 of [6, TS 38.214]. The bitwidth for this field is determined as $\lceil \log_2(I) \rceil$ bits, where $I$ is the number of entries in the higher layer parameter *pdsch-TimeDomainAllocationList* if the higher layer parameter is configured; otherwise $I$ is the number of entries in the default table.

- Minimum applicable scheduling offset indicator – 0 or 1 bit

  - 0 bit if higher layer parameter *minimumSchedulingOffsetK0* is not configured;

  - 1 bit if higher layer parameter *minimumSchedulingOffsetK0* is configured. The 1 bit indication is used to determine the minimum applicable K0 for the active DL BWP and the minimum applicable K2 value for the active UL BWP, if configured respectively, according to Table 7.3.1.1.2-33. If the minimum applicable K0 is indicated, the minimum applicable value of the aperiodic CSI-RS triggering offset for an active DL BWP shall be the same as the minimum applicable K0 value.

- PDSCH-to-HARQ_feedback timing indicator – 0, 1, 2, or 3 bits as defined in Clause 9.2.3 of [5, TS 38.213]. The bitwidth for this field is determined as $\lceil \log_2(I) \rceil$ bits, where $I$ is the number of entries in the higher layer parameter *dl-DataToUL-ACK*.

**Source**: 38.212

141.    Each of the Accused Products further comprise the functionality to "transmit the HARQ feedback based on the determined time offset" based on their compatibility with and practice of the 3GPP 5G Standard. As shown below, this functionality is described in 3GPP TS 38.213 version 16.6.0:

### 9.2.3    UE procedure for reporting HARQ-ACK

A UE does not expect to transmit more than one PUCCH with HARQ-ACK information in a slot per priority index, if the UE is not provided *ackNackFeedbackMode = separate*.

For DCI format 1_0, the PDSCH-to-HARQ_feedback timing indicator field values map to {1, 2, 3, 4, 5, 6, 7, 8}. For a DCI format, other than DCI format 1_0, scheduling a PDSCH reception or a SPS PDSCH release, the PDSCH-to-HARQ_feedback timing indicator field values, if present, map to values for a set of number of slots provided by *dl-DataToUL-ACK, dl-DataToUL-ACK-r16*, or *dl-DataToUL-ACKForDCIFormat1_2*, as defined in Table 9.2.3-1.

For a SPS PDSCH reception ending in slot $n$, the UE transmits the PUCCH in slot $n + k$ where $k$ is provided by the PDSCH-to-HARQ_feedback timing indicator field, if present, in a DCI format activating the SPS PDSCH reception.

If the UE detects a DCI format that does not include a PDSCH-to-HARQ_feedback timing indicator field and schedules a PDSCH reception or activates a SPS PDSCH reception ending in slot $n$, the UE provides corresponding HARQ-ACK information in a PUCCH transmission within slot $n + k$ where $k$ is provided by *dl-DataToUL-ACK*, or *dl-DataToUL-ACK-r16*, or *dl-DataToUL-ACKForDCIFormat1_2*.

**Source**: 38.213

Also:

### 9.2.3    UE procedure for reporting HARQ-ACK

With reference to slots for PUCCH transmissions, if the UE detects a DCI format scheduling a PDSCH reception ending in slot $n$ or if the UE detects a DCI format indicating a SPS PDSCH release or indicating SCell dormancy through a PDCCH reception ending in slot $n$, or if the UE detects a DCI format that requests Type-3 HARQ-ACK codebook report and does not schedule a PDSCH reception through a PDCCH reception ending in slot $n$, as described in clause 9.1.4, the UE provides corresponding HARQ-ACK information in a PUCCH transmission within slot $n + k$, where $k$ is a number of slots and is indicated by the PDSCH-to-HARQ_feedback timing indicator field in the DCI format, if present, or provided by *dl-DataToUL-ACK, dl-DataToUL-ACK-r16*, or *dl-DataToUL-ACKForDCIFormat1_2*. $k = 0$ corresponds to the last slot of the PUCCH transmission that overlaps with the PDSCH reception or with the PDCCH reception in case of SPS PDSCH release or in case of SCell dormancy indication or in case of the DCI format that requests Type-3 HARQ-ACK codebook report and does not schedule a PDSCH reception.

**Source**: 38.213

142.    Thus, as just illustrated above, the Accused Products directly infringe one or more claims of the '186 Patent. Lenovo makes, uses, sells, offers for sale, exports, and/or imports, in this District and/or elsewhere in the United States, these devices and thus directly infringes the '186 Patent.

143.    Lenovo has had knowledge and notice of the '186 Patent since at least November 14, 2024.

144.    Lenovo indirectly infringes the '186 Patent, as provided in 35 U.S.C. §271(b), by inducing infringement by others, such as Lenovo's customers and end-users, in this District and elsewhere in the United States. For example, Lenovo's customers and end-users directly infringe through their use of the inventions claimed in the '186 Patent. Lenovo induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting they use the Accused Products in an infringing manner, including in-store technical support, online technical support, marketing, product manuals, advertisements, and online documentation. As a result of Lenovo's inducement, Lenovo's customers and end-users use the Accused Products in the way Lenovo intends and directly infringe the '186 Patent. Lenovo performs these affirmative acts with knowledge of the '186 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '186 Patent.

145.    Lenovo also indirectly infringes the '186 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States. Lenovo's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Products and causing the Accused Products to be manufactured, used, sold, and offered for sale contribute to Lenovo's customers and end-users use of the Accused Products, such that the '186 Patent is directly infringed. The accused components within the Accused Products are material to the invention of the '186 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Lenovo to be especially made or adapted for use in the infringement of the '186 Patent. Lenovo performs these affirmative acts with knowledge of the

'186 Patent and with intent, or willful blindness, that Lenovo causes the direct infringement of the '186 Patent.

146.    Lenovo's infringement of the '186 Patent has damaged and will continue to damage Hannibal.

147.    Moreover, Lenovo's risk of infringement of the Asserted Patents was either known or was so obvious that it should have been known to Lenovo.

148.    Notwithstanding this knowledge, Lenovo has knowingly or with reckless disregard willfully infringed the '186 Patent. Lenovo continues to infringe despite having received actual notice of its infringement of the '186 Patent on November 14, 2024. Lenovo has thus had actual notice of infringement of the '186 Patent and acted despite an objectively high likelihood that its actions constituted infringement of Hannibal's valid patent rights, either literally or equivalently.

149.    This objective risk was either known or so obvious that it should have been known to Lenovo. Accordingly, Plaintiff seeks enhanced damages pursuant to 35 U.S.C. §§ 284 and 285.

## X.    NOTICE

150.    Hannibal has complied with the notice requirement of 35 U.S.C. § 287 and does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents. This notice requirement has been complied with by all relevant persons at all relevant times.

151.    Lenovo has had actual knowledge of the Asserted Patents and its infringement thereof at least as of receipt of Plaintiff's notice letters dated July 20, 2022 (the '829 Patent), April 18, 2023 (the '642 and '981 Patents), and November 14, 2024 (the '597, '363, and '186 Patents). Alternatively, Lenovo has had actual knowledge of the Asserted Patents at least as of the date of Lenovo's receipt of charts comparing the claims of the Asserted Patents to the 5G standard and/or through service of this Complaint.

## XI.     COMPLIANCE WITH FRAND

152.     Hannibal is the assignee of numerous patents, originally assigned to FG Innovation Company Limited, that are, and remain, essential to practicing the 3GPP 5G Standard.

153.     In conformance with ESTI's IPR Policy, Hannibal informed Lenovo that it is prepared to grant Lenovo an irrevocable license to Hannibal's standard essential patents, including the Asserted Patents, on FRAND or better terms.

154.     Through numerous meetings and correspondence, Hannibal presented, in good faith, technical details evidencing the essentiality of Hannibal's patents.

155.     Accordingly, Hannibal has complied with its FRAND obligations in accordance with ESTI's IPR Policy.

## XII.     JURY DEMAND

156.     Plaintiff Hannibal demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to Fed. R. Civ. P. 38.

## XIII.     REQUEST FOR RELIEF

Hannibal respectfully requests that judgment be entered as follows:

A.     A declaration that the claims of the Asserted Patents are valid and enforceable;

B.     A declaration that one or more claims of the Asserted Patents is infringed by Lenovo literally and/or under the doctrine of equivalents;

C.     A declaration that one or more claims of the Asserted Patents is indirectly infringed by Lenovo;

D.     That the Court award damages adequate to compensate Hannibal for the patent infringement that has occurred, together with prejudgment and post-judgment interest and costs, and an ongoing royalty for continued infringement;

E.      That the Court award any other equitable relief which may be requested and to which Hannibal is entitled;

F.      That the Court find this case to be exceptional pursuant to 35 U.S.C. § 285;

G.      That the Court determine that Lenovo's acts of infringement were willful;

H.      That the Court award enhanced damages against Lenovo pursuant to 35 U.S.C. § 284;

I.      That the Court award reasonable attorneys' fees; and

J.      That the Court award such other relief to Hannibal as the Court deems just and proper.

Dated:  June 3, 2026

Respectfully submitted,

*/s/ Vishal H. Patel*
Vishal H. Patel
Texas Bar No. 24065885
Lead Counsel
Rajkumar Vinnakota
Texas Bar No. 24042337
Gary R. Sorden
Texas Bar No. 24066124
Brian L. King
Texas Bar No. 24055776
Brian A. Carpenter
Texas Bar No. 03840600
Seokin Yeh
Texas Bar No. 24131942
Alexander Jacovetty
Texas Bar No. 24144037
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Tel.: (469) 557-9390
Fax: (469) 533-1587
vpatel@coleschotz.com
kvinnakota@coleschotz.com
gsorden@coleschotz.com
bking@coleschotz.com
bcarpenter@coleschotz.com
syeh@coleschotz.com
ajacovetty@coleschotz.com

**ATTORNEYS FOR PLAINTIFF**
**HANNIBAL IP, LLC**